The Honorable John H. Chun

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED
```

## DEC 11 2023

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

PARADISE SHAW DREIA WILLIAMS,

Defendant.

NO. CR-23-090-01 JHC

**PLEA AGREEMENT**

The United States, through Acting United States Attorney Tessa M. Gorman and Assistant United States Attorney Cindy Chang of the Western District of Washington, and Defendant Paradise Shaw Dreia Williams and Defendant's attorney Michael C. Nance enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.    **The Charge**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Indictment:

a.    Wire Fraud, as charged in Count 9, in violation of Title 18, United States Code, Section 1343; and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      Money Laundering, as charged in Count 26, in violation of Title 18, United States Code, Section 1957.

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document.  Defendant further understands that before entering any guilty plea, Defendant will be placed under oath.  Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.      **Elements of the Offense**.  The elements of the offenses to which Defendant is pleading guilty are as follows:

a.      The elements of Wire Fraud, as charged in Count 9, are as follows:

*First*, the Defendant knowingly participated in, or devised, a scheme or plan for obtaining money or property through false or fraudulent pretenses, representations or promises;

*Second*, the promises, statements, or representations were material, that is, they had a natural tendency to influence a person to part with money or property;

*Third*, the Defendant acted with the intent to defraud;

*Fourth,* the Defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme; and

*Fifth*, the violation occurred in relation to, or involved, benefit payments authorized, transmitted, disbursed or paid in connection with a presidentially-declared major disaster or emergency.

b.      The elements of Money Laundering, as charged in Count 26, are as follows:

*First,* the Defendant knowingly engaged or attempted to engage in a monetary transaction;

*Second,* the Defendant knew that transaction involved criminally derived property;

*Third,* the property had a value greater than $10,000;

*Fourth,* the property was, in fact, derived from a specified unlawful activity; and

*Fifth,* the transaction occurred in the United States.

3.     **The Penalties**. Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a.     For the offense of Wire Fraud, as charged in Count 9:  A maximum term of imprisonment of up to 30 years, a fine of up to $1,000,000, a period of supervision following release from prison of up to five years, and a mandatory special assessment of $100.  If a probationary sentence is imposed, the probation period can be for up to five years.

b.     For the offense of Money Laundering, as charged in Count 26: A maximum term of imprisonment of up to 20 years, a fine of up to $500,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.  If a probationary sentenced is imposed, the probation period can be for up to five years.

4.     **Immigration Consequences**.  Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.  Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

Plea Agreement - 3
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5.     **Rights Waived by Pleading Guilty.**  Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

a.     The right to plead not guilty and to persist in a plea of not guilty;

b.     The right to a speedy and public trial before a jury of Defendant's peers;

c.     The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.     The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.     The right to confront and cross-examine witnesses against Defendant at trial;

f.     The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.     The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.     The right to appeal a finding of guilt or any pretrial rulings.

6.     **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence

Plea Agreement - 4
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.  Accordingly, Defendant understands and acknowledges that:

        a.     The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

        b.     After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

        c.     The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

        d.     Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

    7.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

    8.    **Statement of Facts**.  Defendant admits Defendant is guilty of the charged offense.  The parties agree on the following facts and further agree that all of these facts constitute relevant conduct under the United States Sentencing Guidelines:

        a.     ***Overview.***  From about June 2020 until February 2022, Defendants Paradise Shaw Dreia Williams, D'arius Akim Jackson, Jahri Asad Cunningham, Tia Janee Robinson, Rayvon Darnell Peterson, David Jesus Martinez, and others submitted over 125 applications and fraudulently sought more than $6.8 million, and obtained more

Plea Agreement - 5
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 than $3.3 million, from various federally-funded COVID-19 pandemic relief programs.

2 They used the funds intended to assist individuals and businesses suffering from the

3 economic impacts of the pandemic for extravagant expenses such as luxury cars, lavish

4 trips, cosmetic surgery, jewelry, and designer goods.

5         b.      Defendants' scheme targeted the following COVID-19 pandemic

6 relief programs: U.S. Department of Treasury's Emergency Rental Assistance program

7 administered through Washington State grant programs and King County Eviction

8 Prevention and Rental Assistance Program (EPRAP); the Paycheck Protection Program

9 (PPP) administered by the U.S. Small Business Administration (SBA); the Economic

10 Injury Disaster Loan (EIDL) Program administered by SBA; and Coronavirus Aid,

11 Relief, and Economic Security (CARES) Act unemployment benefits administered

12 through various state workforce agencies, including those in California, South Carolina,

13 and Nevada.

14         c.      Emergency Rental Assistance, EIDL, PPP funds, and CARES Act

15 unemployment benefits were authorized, transferred, disbursed, and paid in connection

16 with a nationwide emergency declared by Presidential Proclamation 9994 (effective as of

17 March 1, 2020) and a Presidential declaration of a major disaster for the State of

18 Washington concerning the COVID-19 pandemic that was issued on March 22, 2020.

19         d.      Williams orchestrated the scheme and artifice to defraud.  In total,

20 Williams personally participated in the submission of over 125 fraudulent applications

21 for Emergency Rental Assistance, EIDL, PPP, and CARES Act unemployment funds.

22 Williams enlisted and directed dozens of uncharged associates, in addition to her five co-

23 defendants, to execute the scheme.  Williams received more than $2 million in fraudulent

24 proceeds, either directly into bank accounts she controlled or in kickback payments she

25 demanded from her associates.

26         e.      Williams, Jackson, Cunningham, Robinson, and Peterson, used their

27 own identities, including numerous aliases and the identities of others, to submit multiple

Plea Agreement - 6
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  fraudulent applications to various programs.  Williams, Jackson, Robinson, and Peterson

2  received kickback payments for fraudulently obtained benefits.  The Defendants

3  impersonated and directed others to impersonate landlords and tenants in

4  communications with EPRAP staff who processed the applications.  Williams created and

5  submitted fake bank statements and other documents to support the fraudulent

6  applications she and her associates submitted.  Williams, and others, also created, used,

7  and maintained multiple email accounts, sometimes using alias names, to perpetuate the

8  fraudulent scheme.

9         f.      Upon receipt of the fraudulent proceeds, the Defendants quickly and

10  methodically laundered the funds through cash withdrawals, wire transfers, and

11  expensive purchases.

12         g.    ***Emergency Rental Assistance.***  In response to millions of

13  Americans facing deep rental debt, fear of evictions, and the loss of basic housing

14  security as a result of the COVID-19 pandemic, the U.S. Department of Treasury's

15  Emergency Rental Assistance program provided funding directly to state and local

16  governments to assist households that were unable to pay rent or utilities.  From March

17  2021 through 2022, Treasury's Emergency Rental Assistance program allocated over

18  $900 million to Washington State and local governments, including King County.  The

19  Washington Department of Commerce received and administered the state's federal

20  funds by providing grants to county governments and non-profit organizations to support

21  the homeless crisis response systems in the state.  In King County, the Department of

22  Community and Human Services distributed over $300 million in direct federal funds and

23  state grants to approximately 30,000 King County households through EPRAP.  Non-

24  Profit Organization 1, which is based in Seattle, also received over $5 million in

25  federally-funded rental assistance grants from the Washington Department of Commerce

26  and distributed the funds to approximately 700 households.

27

h.      To qualify for rental assistance, the household must have been low-income, experiencing financial hardship due to the COVID-19 pandemic, and been at risk of experiencing homelessness or currently experiencing housing instability.  Tenants and landlords could receive up to 12 months of rental assistance (nine months back or current rent and three months advance).  The administering agencies acknowledged that there was insufficient funding to help every household who qualified, thus, the screening criteria was intended to target those most likely to become homeless but for the assistance.

i.      At all times relevant to this case, in King County, a landlord could initiate an application for EPRAP assistance by submitting a delinquent tenant's information, and the tenant and landlord could submit self-attestation forms to document eligibility.  Landlords were also required to submit W-9 forms and, upon request, evidence of a lease or ledger.  After EPRAP calculated the final assistance amount, landlords received an EPRAP agreement by email that they were required to sign and return via DocuSign using interstate wire transmissions.  The agreement certified that the signee was authorized to accept the emergency rental assistance payment in satisfaction of rent owed by a tenant.

j.      King County initiated payment of the EPRAP funds by using an interstate wire to upload payment information to a bank server located outside Washington State.  EPRAP funds were disbursed to landlords via checks or ACH payments using interstate wire transmissions.

k.      Between on or about August 27, 2021, and February 11, 2022, the Defendants, using their own and others' identities and aliases, posed as landlords and submitted at least 79 fraudulent applications for Emergency Rental Assistance funds, seeking over $2.9 million and obtaining over $2.79 million.  At all times relevant to this case, none of the Defendants owned property in King County, and therefore, were not landlords for any property in King County.

1    l.    Williams personally submitted or participated in the submission of at

2  least 78 fraudulent applications for Emergency Rental Assistance funds to King County

3  and one fraudulent application to Non-Profit Organization 1.  Williams created fictitious

4  EPRAP landlord accounts using aliases and the identities of her co-defendants and others.

5  Williams used real King County addresses and fake tenant names.  Williams generated

6  fake documents that were submitted in support of the applications, including ledgers and

7  landlord attestations.  In communications with EPRAP staff about the applications,

8  Williams and others at her direction pretended to be tenants and landlords associated with

9  the fraudulent applications Williams submitted.

10    m.    Williams submitted at least 21 fraudulent applications using her

11  aliases "Shirley William" and "Shaw Williams" as the fictitious landlord's name.  These

12  applications sought and caused King County to pay at least $743,238 directly to bank

13  accounts Williams controlled.   Williams submitted the remaining 58 fraudulent

14  applications, which obtained over $2 million in Emergency Rental Assistance payments,

15  using the names and aliases of Williams' co-defendants and others.  For each of these

16  applications, Williams demanded and received a substantial kickback payment from the

17  criminal proceeds.

18    n.    As one example of this conduct, as charged in Count 9, on or about

19  November 11, 2021, until on or about November 17, 2021, Williams submitted two

20  fraudulent EPRAP applications associated with two fake tenants using the landlord alias

21  of "Shaw Williams."  In communications with EPRAP staff, Williams and others

22  impersonated the landlord and tenants for these applications.  Williams created and

23  uploaded fake documents to create the "Shaw Williams" landlord account and support

24  these fraudulent applications.  The landlord account for Shaw Williams directed King

25  County to pay the rental assistance into Williams' Bank of America account.  On or about

26  November 19, 2021, in connection with these two fraudulent EPRAP applications, King

27

Plea Agreement - 9
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  County used interstate wires originating in King County, Washington to pay $83,280 in

2  Emergency Rental Assistance into Williams' Bank of America account.

3         o.       Within a week of the deposit from King County, Williams made

4  three separate cash withdrawals for $10,000 each.  Additionally, on or about November

5  22, 2021, using criminal proceeds from the Emergency Rental Assistance scheme she

6  orchestrated, Williams wired approximately $31,343.12 to Auto Dealer 1, in Seattle, to

7  purchase a 2017 Lexus ES Sedan (Vehicle Identification Number

8  58ABK1GG8HU072925).  Williams knew the funds used to purchase the vehicle were

9  derived from the charged fraud scheme.

10        p.       Similarly, as charged in Count 26, on or about February 18, 2022,

11  using the criminal proceeds from the Emergency Rental Assistance scheme she

12  orchestrated, Williams made a cash payment of $60,000 to Auto Dealer 1, in Seattle,

13  towards the purchase of a 2018 Range Rover sport utility vehicle (Vehicle Identification

14  Number SALYB2RV2JA727314).  Williams used only $100 bills or higher and knew

15  that the cash was derived from the charged fraud scheme.

16        q.       ***Paycheck Protection Program.***  PPP was a COVID-19 pandemic

17  relief program administered by SBA that provided forgivable loans to small businesses

18  for job retention and certain other expenses.  The PPP permitted participating third-party

19  lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts,

20  utilities, rent/mortgage, accounts payable and other bills incurred by qualifying

21  businesses during and resulting from the COVID-19 pandemic.  PPP loans were fully

22  guaranteed by the SBA.  In the event of default, SBA will fully satisfy the lender for any

23  balance remaining on the loan.  Further, SBA will forgive any loan up to 100 percent if

24  the borrower uses the funds for specified purposes.

25        r.       To obtain a PPP loan, a qualifying business, which included certain

26  sole proprietorships, had to submit a PPP loan application, which was signed by an

27  authorized representative of the business.  The PPP loan application required the business

Plea Agreement - 10
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  (through its authorized representative) to acknowledge the program rules and make

2  certain affirmative certifications to be eligible to obtain the PPP loan, including that the

3  business was in operation on February 15, 2020 and either had employees for whom it

4  paid salaries and payroll taxes or paid independent contractors.  A business applying for a

5  PPP loan was required to provide documentation showing its payroll expenses, such as

6  filed federal income tax documents.

7          s.      Individuals who operated a business under a "sole proprietorship"

8  business structure were also eligible for a PPP loan.  To qualify for such a PPP loan,

9  individuals had to report and document their income and expenses from the sole

10  proprietorship, as typically reported to the Internal Revenue Service on a "Form 1040,

11  Schedule C," for a given tax year.  As with other PPP loans, this information and

12  supporting documentation was used to calculate the amount of money the individual was

13  entitled to receive under the PPP.  The maximum loan amount for a sole proprietorship

14  with no employees was approximately $20,833.

15          t.      At all times relevant to the charged offenses, PPP loan documents

16  were electronically submitted or caused to be submitted by the borrower to a third-party

17  lender service provider, which did not have any servers in Washington State.  The

18  borrower signed the loan documents using DocuSign, which has servers within and

19  outside Washington State, and data for a single customer could reside in multiple

20  locations.  The third-party lender service provider accessed the signed loan documents

21  and caused those documents to be sent to a third-party lender that did not have any

22  servers located within Washington State.  Therefore, every PPP loan document relevant

23  to the charged offenses and initiated online from Washington State, resulted in an

24  interstate wire communication that originated in Washington State and traveled to

25  another state.

26          u.      Once approved, the business received the PPP loan proceeds via an

27  electronic funds transfer from the third-party lender to a financial account under the

Plea Agreement - 11
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   control of the business.  The proceeds of a PPP loan could be used for certain specified

2   items, such as payroll costs, costs related to the continuation of group health care

3   benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted

4   to be used by the borrowers to purchase consumer goods, automobiles, personal

5   residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to

6   fund the borrower's ordinary day-to-day living expenses unrelated to the specified

7   authorized expenses.

8          v.     Between on or about April 10, 2021, and May 23, 2021, Williams,

9   co-defendant Jackson, and others submitted at least 13 fraudulent PPP applications to

10  lenders who then transmitted the loan files using interstate transmissions.  In total, the

11  applications sought approximately $253,000 and obtained approximately $211,730.  In

12  exchange for facilitating and submitting the fraudulent applications, the individuals paid

13  Williams a kickback of approximately 50% upon receipt of the funds.

14         w.     As one example of this conduct, on or about May 27, 2021, an

15  interstate wire originating in Washington was used to transmit a fraudulent PPP

16  application that Williams prepared in J.K.'s identity with J.K.'s authorization.  The

17  application claimed that J.K. was a sole proprietor of a food delivery business that began

18  on January 1, 2020, with a gross income of $100,000.  All of these representations were

19  false, and Williams created and submitted a fake bank statement in support of the

20  application.  The application directed loan proceeds to be paid into a bank account in

21  J.K.'s name.  On or about June 7, 2021, the application was funded for $20,832, and the

22  proceeds were deposited into J.K.'s bank account.  J.K. used multiple account transfers to

23  pay Williams approximately $10,000 in criminal proceeds.

24         x.     ***Economic Injury Disaster Loan Program.***  SBA administers the

25  EIDL Program, which provides low-interest financing to small businesses and non-profit

26  organizations in regions affected by declared disasters.  In March 2020, the CARES Act

27  authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses

Plea Agreement - 12
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

experiencing substantial financial disruption due to the COVID-19 pandemic.  The

CARES Act and subsequent legislation also authorized the SBA to issue advances of up

to $10,000 to small businesses within three days of applying for an EIDL.  EIDL

Advances did not have to be repaid.  EIDL funds can be used for payroll expenses, sick

leave, production costs, and business obligations, such as debts, rent, and mortgage

payments.

y. A qualifying business, which could include sole proprietorships, that

applied for an EIDL had to submit an application to the SBA and provide information

about its operations, such as the number of employees, gross revenues for the 12-month

period preceding the disaster, and cost of goods sold in the 12-month period preceding

the disaster.  The applicant had to certify that all of the information in the application was

true and correct to the best of the applicant's knowledge.

z. Applicants submitted EIDL applications online directly to the SBA

for processing.  SBA directly disbursed EIDL funds to an account identified by the

applicant.  In all instances relevant to this Indictment, when an applicant submitted an

COVID-19 EIDL application online, SBA received it at a server outside Washington

State.  Therefore, every COVID-19 EIDL application relevant to this Indictment and

submitted online from Washington State, resulted in an interstate wire communication

that originated in Washington State and traveled to another state.

aa. Beginning no later than June 25, 2020, until at least on or about

August 17, 2021, Williams submitted at least 35 fraudulent EIDL applications to SBA

using the identities of herself, her co-defendants, and others, seeking a total of

approximately $3.7 million and obtaining approximately $300,000.  In exchange for

facilitating and submitting the fraudulent applications, the individuals who received

EIDL proceeds paid Williams a kickback upon receipt of the funds.

bb. Williams submitted at least three fraudulent EIDL applications using

her own identity and maintained at least four email addresses that she repeatedly used to

Plea Agreement - 13
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   submit the fraudulent applications.  Williams also submitted multiple applications with

2   identical or strikingly similar business information.  All of the applicants claimed to be

3   sole proprietorships, and most of the business or trade names followed the naming

4   convention of using the accomplice's first name followed by "LLC."  For instance, the

5   trade name for co-defendant Jahri Cunningham was "JahriLLC."  Most of the fictitious

6   entities claimed to provide hair and nail services.

7           cc.   As one example of this conduct, on or about July 13, 2020, Williams

8   submitted a fraudulent EIDL application using L.B.'s identity with L.B.'s authorization.

9   The application claimed that L.B. was a sole proprietor of a hair and nail salon, "Salon

10   LLC."  The application claimed gross revenues of $1,347,232 for the 12 months prior to

11   January 31, 2020, identified L.B. as the "Owner," and claimed to have 18 employees as

12   of January 31, 2020.  The business was purportedly established on April 3, 2017.  All of

13   these representations were false.  The application directed loan proceeds to be paid to

14   L.B.'s Bank of America account.  On or about July 17, 2020, SBA funded the loan for

15   $150,000.  Within a week of the disbursement into L.B.'s bank account on or about July

16   21, 2020, L.B. withdrew over $115,000 in a series of teller and ATM transactions.  L.B.

17   also transferred over $11,000 to Williams using Cash App and made nearly $10,000 in

18   purchases at Yves Saint Lauren, Christian Dior, and Versace.

19           dd.   ***CARES Act Unemployment Benefits.***  The CARES Act also

20   provided federal funding to expand unemployment benefits eligibility and increased

21   benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal

22   Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance

23   Program (LWAP).  These benefits were administered through a joint state and federal

24   program that provided monetary benefits to eligible beneficiaries.  Unemployment

25   benefits were intended to provide temporary financial assistance to lawful workers who

26   were unemployed through no fault of their own.

27

Plea Agreement - 14
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        ee.    CARES Act unemployment benefits were funded by the United

2 States government through the Department of Labor and administered at the state level

3 by state agencies known as state workforce agencies.  Generally, applicants could submit

4 applications for benefits online to state workforce agencies.  Applicants had to answer

5 specific questions to establish eligibility to receive benefits, including their name, social

6 security number, and mailing address, among other things.  Applicants also had to self-

7 certify that they met a COVID-19-related reason for being unemployed, partially

8 employed, or unable to work.

9        ff.    Beginning on or about June 19, 2020, until on or about September 28,

10 2020, Williams submitted applications for CARES Act unemployment benefits in her

11 own identity to the state workforce agencies in Nevada and South Carolina despite the

12 fact that she had neither lived nor worked in those states in 2019 and 2020, as she

13 represented on the applications.  These claims were denied without being paid.  From

14 July 29, 2021, and continuing until at least August 11, 2021, Williams also attempted to

15 submit fraudulent unemployment applications in the identities of other individuals to the

16 state workforce agency for California.

17        The parties agree that the Court may consider additional facts contained in the

18 Presentence Report (subject to standard objections by the parties) and/or that may be

19 presented by the United States or Defendant at the time of sentencing, and that the factual

20 statement contained herein is not intended to limit the facts that the parties may present to

21 the Court at the time of sentencing.

22        9.    **Sentencing Factors**.  The parties agree that the following Sentencing

23 Guidelines provisions apply to this case:

24        The following provisions apply to defendant's conviction of Counts 9 and 26:

25        a.    All counts involve substantially the same harm and are grouped

26 together in a single group, pursuant to USSG § 3D1.2(b), because the counts involve the

27

Plea Agreement - 15
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 same victim and two or more acts or transactions connected by a common criminal

2 objective or constituting part of a common scheme or plan;

3        b.     A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

4        c.     An increase of 18 points because the intended loss from the offense

5 exceeded $3,500,000 but was less than $9,500,000, pursuant to USSG § 2B1.1(b)(1)(J);

6        d.     An increase of two points because the offense involved sophisticated

7 means, pursuant to USSG § 2B1.1(b)(10);

8        e.     An increase of two points because the offense involved benefits

9 authorized under a presidentially-declared major disaster or emergency, pursuant to

10 USSG § 2B1.1(b)(12);

11        f.     An increase of one point because the defendant was convicted of

12 money laundering under 18 U.S.C. § 1957, pursuant to USSG § 2S1.1(b)(2)(A); and

13        g.     An increase of four points because the defendant was an organizer or

14 leader of a criminal activity that involved five or more participants and was otherwise

15 extensive, pursuant to USSG § 3B1.1(a).

16     The parties agree they are free to present arguments regarding the applicability of

17 all other provisions of the United States Sentencing Guidelines.  Defendant understands,

18 however, that at the time of sentencing, the Court is free to reject these stipulated

19 adjustments, and is further free to apply additional downward or upward adjustments in

20 determining Defendant's Sentencing Guidelines range.

21     10.    **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

22 Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

23 to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

24 make the motion necessary to permit the Court to decrease the total offense level by three

25 (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

26 United States by timely notifying the United States of Defendant's intention to plead

27

Plea Agreement - 16
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 guilty, thereby permitting the United States to avoid preparing for trial and permitting the

2 Court to allocate its resources efficiently.

3    11.   **Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of

4 Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the

5 appropriate term of imprisonment to be imposed by the Court at the time of sentencing is

6 a term of no more than 110 months. Defendant is free to recommend any sentence.

7 Defendant understands that this recommendation is not binding on the Court, and the

8 Court may reject the recommendation of the parties and may impose any term of

9 imprisonment up to the statutory maximum penalty authorized by law. Defendant

10 further understands that Defendant cannot withdraw a guilty plea simply because of the

11 sentence imposed by the Court. Except as otherwise provided in this Plea Agreement,

12 the parties are free to present arguments regarding any other aspect of sentencing.

13    12.   **Restitution.** Defendant shall make restitution to the U.S. Department of

14 the Treasury in the amount of $2,791,241, with credit for any amounts already paid. The

15 Defendant shall also make restitution to the U.S. Small Business Administration in the

16 amount of $512,730, with credit for any amounts already paid.

17        a.   The full amount of restitution shall be due and payable immediately

18 on entry of judgment and shall be paid as quickly as possible. If the Court finds that the

19 defendant is unable to make immediate restitution in full and sets a payment schedule as

20 contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

21 represents a minimum payment obligation and does not preclude the U.S. Attorney's

22 Office from pursuing any other means by which to satisfy the defendant's full and

23 immediately-enforceable financial obligation, including, but not limited to, by pursuing

24 assets that come to light only after the district court finds that the defendant is unable to

25 make immediate restitution.

26        b.   Defendant agrees to disclose all assets in which Defendant has any

27 interest or over which Defendant exercises control, directly or indirectly, including those

Plea Agreement - 17
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the

2  United States' investigation identifying all property in which Defendant has an interest

3  and with the United States' lawful efforts to enforce prompt payment of the financial

4  obligations to be imposed in connection with this prosecution. Defendant's cooperation

5  obligations are: (1) before sentencing, and no more than 30 days after executing this Plea

6  Agreement, truthfully and completely executing a Financial Disclosure Statement

7  provided by the United States Attorney's Office and signed under penalty of perjury

8  regarding Defendant's and Defendant's spouse's financial circumstances and producing

9  supporting documentation, including  tax returns, as requested; (2) providing updates

10  with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within

11  seven days of the event giving rise to the changed circumstances; (3) authorizing the

12  United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

13  providing waivers, consents or releases requested by the U.S. Attorney's Office to access

14  records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

15  inspect and copy all financial documents and information held by the U.S. Probation

16  Office; (6) submitting to an interview regarding Defendant's Financial Statement and

17  supporting documents before sentencing (if requested by the United States Attorney's

18  Office), and fully and truthfully answering questions during such interview; and (7)

19  notifying the United States Attorney's Office before transferring any interest in property

20  owned directly or indirectly by Defendant, including any interest held or owned in any

21  other name, including all forms of business entities and trusts.

22         c.      The parties acknowledge that voluntary payment of restitution prior

23  to the adjudication of guilt is a factor the Court considers in determining whether

24  Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).  In

25  addition, in any event, the government will consider Defendant's cooperation regarding

26  restitution in making its sentencing recommendation.

27

Plea Agreement - 18
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.  **Forfeiture of Assets**.  Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case.

Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property that constitutes or is derived from proceeds Defendant obtained from the wire-fraud scheme set forth above and charged in Count 9 of the Indictment.  All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of, Title 28, United States Code, Section 2461(c), and includes but is not limited to:

      a.    a judgment for a sum of money, also known as a forfeiture money judgment, in the amount of $2,023,104 representing the proceeds Defendant personally obtained from her commission of the wire-fraud scheme described above;

      b.    one Lexus ES Sedan, seized on or about June 5, 2023; and

      c.    one Range Rover Sport Utility Vehicle, seized on or about June 5, 2023.

Defendant further agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property involved in the offense charged in Count 26 of the Indictment. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1) and includes but is not limited to:

      a.    one Range Rover Sport Utility Vehicle, seized on or about June 5, 2023.

Defendant understands and acknowledges the forfeited sum of money set forth above is separate and distinct from any restitution that is ordered in this case. The United States agrees, however, that it will request that the Attorney General apply any amounts it collects toward satisfaction of this forfeited sum to the restitution that is ordered. The United States also agrees that any amount Defendant pays toward restitution will be credited against this forfeited sum.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any assets located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated. Defendant further agrees not to assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if that property constitutes or is traceable to proceeds of her commission of the wire-fraud scheme described above and/or was involved in the offense charged in Count 26.

14. **Abandonment of Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

15. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes

Plea Agreement - 20
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   were committed by Defendant solely because of the promises made by Defendant in this

2   Plea Agreement.  Defendant agrees, however, that for purposes of preparing the

3   Presentence Report, the United States Attorney's Office will provide the United States

4   Probation Office with evidence of all conduct committed by Defendant.

5          Defendant agrees that any charges to be dismissed before or at the time of

6   sentencing were substantially justified in light of the evidence available to the United

7   States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

8   with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

9   (1997).

10         16.     **Breach, Waiver, and Post-Plea Conduct.**  Defendant agrees that, if

11  Defendant breaches this Plea Agreement: (a) the United States may withdraw from this

12  Plea Agreement and Defendant may be prosecuted for all offenses for which the United

13  States has evidence; (b) Defendant will not oppose any steps taken by the United States

14  to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

15  Agreement; and (c) Defendant waives any objection to the re-institution of any charges

16  that previously were dismissed or any additional charges that had not been prosecuted.

17         Defendant further understands that if, after the date of this Plea Agreement,

18  Defendant should engage in illegal conduct, or conduct that violates any conditions of

19  release or the conditions of confinement (examples of which include, but are not limited

20  to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

21  pending sentencing, and false statements to law enforcement agents, the Pretrial Services

22  Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

23  to file additional charges against Defendant or to seek a sentence that takes such conduct

24  into consideration by requesting the Court to apply additional adjustments or

25  enhancements in its Sentencing Guidelines calculations in order to increase the applicable

26  advisory Guidelines range, and/or by seeking an upward departure or variance from the

27  calculated advisory Guidelines range.  Under these circumstances, the United States is

Plea Agreement - 21
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  free to seek such adjustments, enhancements, departures, and/or variances even if

2  otherwise precluded by the terms of the Plea Agreement.

3      17.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

4  Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

5  Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

6  pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

7  judgment of conviction.  Defendant further agrees that, provided the Court imposes a

8  custodial sentence that is within or below the Sentencing Guidelines range (or the

9  statutory mandatory minimum, if greater than the Guidelines range) as determined by the

10  Court at the time of sentencing, Defendant waives to the full extent of the law:

11          a.      Any right conferred by Title 18, United States Code, Section 3742,

12  to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

13  restitution order, probation or supervised release conditions, or forfeiture order (if

14  applicable); and

15          b.      Any right to bring a collateral attack against the conviction and

16  sentence, including any restitution order imposed, except as it may relate to the

17  effectiveness of legal representation.

18      This waiver does not preclude Defendant from bringing an appropriate motion

19  pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

20  the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

21      If Defendant breaches this Plea Agreement at any time by appealing or collaterally

22  attacking (except as to effectiveness of legal representation) the conviction or sentence in

23  any way, the United States may prosecute Defendant for any counts, including those with

24  mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

25  Agreement.

26      18.    **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

27  this Plea Agreement freely and voluntarily, and that no threats or promises were made to

Plea Agreement - 22
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

2  Agreement or set forth on the record at the change of plea hearing in this matter.

3      19.    **Statute of Limitations**.  In the event this Plea Agreement is not accepted

4  by the Court for any reason, or Defendant breaches any of the terms of this Plea

5  Agreement, the statute of limitations shall be deemed to have been tolled from the date of

6  the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

7  Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

8  of the Plea Agreement by Defendant is discovered by the United States Attorney's

9  Office.

10     20.    **Completeness of Plea Agreement**.  The United States and Defendant

11 acknowledge that these terms constitute the entire Plea Agreement between the parties,

12 except as may be set forth on the record at the change of plea hearing in this matter.  This

13 Plea Agreement binds only the United States Attorney's Office for the Western District

14 of Washington.  It does not bind any other United States Attorney's Office or any other

15 office or agency of the United States, or any state or local prosecutor.

16     Dated this 11th day of December, 2023.

18 PARADISE SHAW DREIA WILLIAMS
19 Defendant

20

21 MICHAEL C. NANCE
   Attorney for Defendant

23 CINDY CHANG
24 Assistant United States Attorney

Plea Agreement - 23
*United States v. Williams*, CR23-090-01 JHC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970