UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PARADISE SHAW DREIA WILLIAMS,<br><br>Defendant. | NO. CR-23-090-01 JHC<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Paradise Williams is a stunningly prolific criminal who orchestrated the most expansive COVID-19 pandemic fraud scheme in this district to date and the largest fleecing of emergency rental assistance funds in the nation. Throughout the entire duration of our unprecedented national emergency, Williams involved over 50 associates to submit more than 125 fraudulent applications and claims, seeking more than $6.8 million from every major federal pandemic assistance program. Williams stole more than $500,000 intended for small businesses suffering from the economic impacts of the pandemic and nearly $3 million from King County residents on the brink of eviction during the winter of 2021. While small businesses and King County residents suffered, Williams used the stolen aid to fund a lavish lifestyle that included a custom-wrapped

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Range Rover SUV, a Lexus ES sedan, luxurious international travel, diamond jewelry, designer goods, and plastic surgery in Colombia.

Williams has pled guilty to one count of wire fraud and one count of money laundering. The United States recommends that the Court sentence Williams to 110 months of imprisonment, followed by five years of supervised release. This below-Guideline sentence is commensurate to other substantial sentences for major yet less aggravating pandemic fraud in this district. The Court should further order Williams to pay restitution in the amount of $3,303,971, as agreed upon in the Plea Agreement. For the reasons discussed herein, the government does not support a recommendation for the Bureau of Prisons' Residential Drug Abuse Treatment Program (RDAP).

## I.    BACKGROUND

### A.    Williams Stole Pandemic Funds Intended for Vulnerable King County Residents and Small Businesses.

As the COVID-19 pandemic economically devasted Americans across the country, the federal government enacted measures to assist small businesses, workers who lost their jobs because of the pandemic, and tenants who were vulnerable to eviction. At the onset of the pandemic, in March 2020, Congress authorized federal funding for Economic Injury Disaster Loans (EIDL) of up to $2 million for eligible small businesses; the Paycheck Protection Program (PPP), which provided forgivable loans to small businesses to keep workers employed; and expanded unemployment benefits for American workers who lost their livelihoods. *See* PSR at ¶ 15.

When COVID-19 arrived, Williams was already a seasoned fraudster fluent in sophisticated money laundering methods, had recently completed a 90-day custodial sentence for driving under the influence (amended down to negligent driving) in King County, and was on monitored state probation. With the sudden availability of billions of dollars in emergency federal aid, Williams took advantage of this catastrophic period in our nation as an opportunity for self-enrichment.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Unemployment Benefits – Washington, Nevada, South Carolina.** Within months after presidential declarations of a nationwide emergency and major disasters in every state, in June 2020, Williams submitted fraudulent unemployment benefits applications in her own identity to Washington and Nevada. A few months later, on about September 28, 2020, Williams also submitted a fraudulent unemployment benefit application to South Carolina. All three applications were denied.

**EIDL.** Undeterred by her unemployment application denials, in June 2020, Williams began filing fraudulent EIDL applications using her own identity and the identities of her family, friends, and associates. By the end of the calendar year, Williams personally filed at least 38 fraudulent EIDL applications for fictitious entities, claiming annual gross revenues of up to $14.8 million, seeking more than $4.1 million in assistance, and causing $300,000 to be disbursed. PSR at ¶ 19. SBA's fraud prevention system resulted in the denial of all but two of the applications, in part, because Williams used one of four common email addresses and common electronic devices to submit the applications.

One of the two EIDL applications that resulted in a $150,000 disbursement involved Associate 1. On about July 13, 2020, Williams submitted a fraudulent application in Associate 1's identity, claiming she was a sole proprietorship for a salon that grossed more than $1.3 million in annual revenue. The application directed funds to be disbursed to a bank account held in Associate 1's identity, and on about July 17, the Small Business Administration (SBA) funded the account with $150,000. *See id.* at ¶ 32. Associate 1 transferred over $11,000 to Williams using CashApp and withdrew over $115,000 in a series of teller and ATM transactions. *Id.*

Less than two weeks later, on July 29, 2020, Associate 1 reported to Auburn Police that Williams came to her home, assaulted her, and stole $60,000 in cash. Associate 1, who stated she was a student in college, refused to report how she earned the cash or how Williams knew of its existence. *See* Ex. A, Auburn Police Dep't, Report for Incident 20-07684. Based on the evidence gathered in this case, it appears Williams assaulted Associate 1 to collect criminal proceeds she deemed to still be owed to her.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Two months later, on about September 19, 2020, Associate 1 texted[1] Williams in a panic because federal investigators contacted her mother about the fraudulent application:

> Yoo the feds called my mom about about the sba today. Idk who you told about it but I never told nobody like you said not too! People is talking my god mom hella ppl calling her about it saying that I did it with you now idk what we gone do about this but I'm not about to go to jail about it tf

In response, Williams feigned ignorance and texted, "Idk [I don't know] what you're talking about" and "Lol get off my line."

**PPP.** In January 2021, Williams filed her last two fraudulent EIDL applications, and they were denied. However, she seized another opportunity to defraud pandemic assistance when in early March 2021, the SBA expanded PPP eligibility and increased loan amounts for sole proprietors and independent contractors. In April and May 2021, Williams used her own identity, an alias, and the identities of her family, friends, and associates to file at least 14 fraudulent PPP loan applications for fictitious sole proprietorships seeking more than $250,000 and obtaining approximately $211,730. *See* PSR at ¶¶ 18, 28-29. Although many of the identities matched identities Williams used for EIDL applications, Williams had more success evading fraud detection tools by using unique email addresses for each application and creating altered bank statements to submit as supporting documentation for the applications. As a result of a fraudulent application using Williams' alias "Shaw Deria Williams," Williams' bank account received $20,832 in PPP proceeds. Williams charged $50 for filing each fraudulent application and received approximately half of the proceeds deposited in accounts belonging to her associates.

---

[1] All text messages referenced in the government's filings were seized pursuant to a search warrant for Williams' devices, authorized on June 3, 2022, following seizure of the devices from Williams' Kent residence on March 4, 2022. The contents of the devices, including all referenced text messages, were produced on July 7, 2023 to all defendants as USA-00026391 and USA-00026475.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Williams was so prolific in defrauding pandemic programs that in July 2021, a phone number she did not have saved in her phone contacted her about submitting a fraudulent PPP application:

| Timestamp: Time | From | To | Text |
|---|---|---|---|
| 7/15/2021 5:43:41 PM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | Hey just wanted to tap in and see if you can help me |
| 7/15/2021 6:05:55 PM(UTC-7) | **WILLIAMS** | ASSOCIATE 2 | Who's this |
| 7/15/2021 6:59:43 PM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | [ASSOCIATE 2] |
| 7/15/2021 7:57:01 PM(UTC-7) | **WILLIAMS** | ASSOCIATE 2 | What you need help with |
| 7/15/2021 8:14:39 PM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | Ppp |
| 7/16/2021 2:25:43 PM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | ? |
| 7/17/2021 11:23:04 AM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | Nevermind if your not doing it no more |
| 7/28/2021 8:20:10 AM(UTC-7) | ASSOCIATE 2 | **WILLIAMS** | Hey |
| 7/28/2021 8:27:04 AM(UTC-7) | **WILLIAMS** | ASSOCIATE 2 | Hey |
| 7/28/2021 8:35:01 AM(UTC-7) | ASSOCIATE 2 | WILLIAMS | Can you do that for me? |
| 7/28/2021 8:36:26 AM(UTC-7) | **WILLIAMS** | ASSOCIATE 2 | I need 50 up front for doing the app |
| 7/28/2021 8:37:04 AM(UTC-7) | **WILLIAMS** | ASSOCIATE 2 | And 3k when it hits |

A few weeks later, on about August 16, 2021, Williams confirmed that Associate 2's fraudulent application had been funded for more than expected and demanded a $7,000 kickback.

**Unemployment Benefits – California.**  As Williams created and submitted Associate 2's fraudulent PPP application, she also sought assistance from co-defendant Tia Robinson to defraud California's unemployment benefits.  As detailed in the government's sentencing memorandum for Tia Robinson, in August 2021, Williams and

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Robinson circumvented California's enhanced identity verification system and submitted fraudulent unemployment claims to California using the identities of other individuals. *See id.* at ¶ 33; Dkt. 172 at 3-4, USA's Sent. Mem. as to Robinson.

**Emergency Rental Assistance.** In the fall of 2021, Williams turned her attention to a new source of pandemic assistance—Treasury's Emergency Rental Assistance Program, which was administered through state and local governments and community organizations. Although Williams' text messages show that she attempted to submit fraudulent rental assistance applications to multiple local organizations in King County, she found success with a single application to Non-Profit Organization 1 and at least 78 applications to the county-administered King County Eviction Protection and Rental Assistance Program (EPRAP). *See* PSR at ¶¶ 17, 24-26. EPRAP received over $300 million in federal Emergency Rental Assistance funds and state grants to help King County residents on the verge of eviction as a result of the COVID-19 pandemic, and Williams is responsible for stealing nearly $3 million of those finite funds. *See id.*

Over time, Williams enlisted her five co-defendants and others to increase the volume of her fraudulent submissions, but Williams remained the undisputed hub of the scheme. In an effort to lessen scrutiny, Williams knew she could not associate too many tenant applications with any one landlord. *See* Dkt. 172 at 6 (text to Robinson: "But it's fine we can use your account 2/3 times then we can find someone else and just tell them they can make 5k and don't be hard"). Instead, Williams created at least 25 fictitious EPRAP landlord accounts using aliases and the identities of her associates. Williams created false documentation, such as ledgers, landlord attestations, and leases, to support the applications. Williams communicated directly with EPRAP staff to impersonate both landlords and tenants. PSR at ¶ 24. And when Williams and Robinson learned that they would need notices of eviction to jump to the front of the line when EPRAP funds were dwindling, Williams created fake eviction documents. *See id.*; Dkt. 172 at 9.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Over the course of approximately six months, Williams submitted at least 21 fraudulent applications using aliases "Shirley Williams" and "Shaw Williams" as fictitious landlords. PSR at ¶ 25. These applications caused King County to pay at least $724,238 into bank accounts Williams controlled. *Id.* Williams submitted at least an additional 58 fraudulent applications using the names and aliases of her co-defendants and other associates, resulting in the payment of over $2 million in emergency rental assistance being paid to dozens of other accounts. *Id.* Approximately half of these funds would return to Williams through laundered cash kickback payments from her associates.

The last fraudulent EPRAP payment Williams caused to be paid before King County's funds were exhausted was on about February 11, 2022. Less than a month later, on March 4, 2022, the FBI executed a search warrant on Williams' then-home in Kent, Washington and seized, *inter alia*, Williams' electronic devices. Federal agents informed Williams about the pending federal investigation against her. Williams retained counsel and, presumably, benefited from the advice of counsel. Nevertheless, as detailed in the PSR and below, Williams continued a wide range of criminal conduct. In fact, on the eve of her arrest in Phoenix, in May 2023, Williams submitted a fraudulent application to Arizona's Emergency Rent Assistance Program, claiming she lost her job after contracting COVID. Williams received $8,400 before authorities halted the assistance after her arrest. *See id.* at ¶ 80.

In summary, from the onset of the pandemic through her arrest—even after the execution of a federal search warrant on her residence and electronic devices—Paradise Williams was unyielding in her exploitation of an unprecedented global public health emergency and national disaster.

**B.** **Williams Stole Pandemic Aid to Fund Her Lavish Lifestyle.**

Williams quickly and strategically laundered more than $2 million in criminal proceeds before financial institutions or the government could detect her fraud and seize

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the assets. Williams used the stolen pandemic aid to fund an extravagant lifestyle with luxury cars, lavish vacations, diamond jewelry, designer goods, and plastic surgery in Colombia.

In the fall of 2021, after she had received the bulk of her fraudulent PPP proceeds and began stealing emergency rental funds, Williams' bank account statements showed that she spent thousands of dollars on luxury items such as custom jewelry and Christian Dior. On about November 21, 2021, Williams wired approximately $36,000 to purchase a 2017 Lexus ES sedan:

 

In late January 2021, Williams made a medical tourism trip to Colombia for plastic surgery, but even from abroad, she did not relent in pilfering the dwindling EPRAP funds. On about January 27, 2021, Robinson texted Williams that she needed another King County address to submit a new fraudulent application. Williams responded that she was about to go into surgery but that she would try to get her an address. Later that evening, after surgery, Williams instructed Robinson how to

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fraudulently complete eviction paperwork so that the pair could push their fake applications to the front of the line.

After returning to the United States and wrapping up her heist of millions from ERPAP, in February 2022, Williams purchased a 2018 Land Rover Range Rover Velar SUV with $63,511 cash, using $100 bills or higher. *See* PSR at ¶ 27. By the time of her arrest, Williams had also custom-wrapped the vehicle that she repeatedly parked in the reserved handicap spot at her Phoenix apartment complex:



//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Williams' Instagram posts during that same month showcased a trip to Vegas, designer goods, and her diamond jewels:



After the FBI executed the search warrant on her home and seized her devices, Williams remained undeterred and two months later, jetted off to Mexico with Robinson in May 2022. Williams' Instagram post captions from the trip included, "Can't give it up because I love the lifestyle" and "By the time you realize my worth I'll be worth more."

//

//

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Her summer travels included luxe trips to New York for Peterson's birthday and Scottsdale:





//

//

//

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Six months after the FBI executed a search warrant on her home, Williams embarked on a trip to Dubai, where she held exotic animals and reveled at resorts:



**paradise_dior**
Dubai Zoo

263 likes
paradise_dior Where the wild things are 🐅
View all 38 comments
September 25, 2022



**paradise_dior**
FIVE Palm Jumeirah Dubai

Liked by **fuller7829** and **others**
paradise_dior Dear Dubai, I love you.
September 26, 2022

By the end of the calendar year, Williams and Peterson relocated to Arizona. Using the alias of "Darnell Peterson," the pair first rented a luxury townhome in a gated Scottsdale complex that describes itself as "resort-style living,"[2] complete with a 60-foot

//

---

[2] https://www.catherinescottsdale.com/photogallery.aspx

pool, sauna, and spa facilities:



After a luxury trip to Puerto Rico in February 2023 for Williams' birthday, the pair elected to stop paying rent in Scottsdale and were evicted in March 2023, after Williams signed a lease for them to live in a luxury apartment complex in Phoenix. *See* Ex. B, FBI Report by Special Agent Damon (Feb. 15, 2023). Their new residence represents itself as "luxury, perfected" with amenities such as weekly live grand piano performances, poolside café service, and a hot tub:[3]



---

[3] https://www.altanorthcentral.com/

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.    PROCEDURAL HISTORY

On May 31, 2023, the Grand Jury returned a 26-count indictment, charging Paradise Williams, D'Arius Jackson, Jahri Cunningham, Tia Robinson, Rayvon Peterson, and David Martinez with various counts of wire fraud in connection with a presidentially declared emergency or major disaster, in violation of 18 U.S.C. § 1343; and money laundering.  Dkt. 1.  Williams was charged with all 19 counts of wire fraud (Counts 1-19) and two counts of money laundering (Counts 25-26) for the purchase of two luxury vehicles.

On June 5, 2023, Williams was arrested in Phoenix and detained pending transfer to this district.  PSR at ¶ 6.  On June 20, 2023, Williams made her initial appearance in this district and was ordered detained pending trial.  *Id.*

On December 11, 2023, Williams pled guilty to wire fraud as charged in Count 9 and money laundering as charged in Count 26.  Dkt. 140-43.

## III.    SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations.  Counts 9 and 26 are grouped pursuant to USSG § 3D1.2(d):

| Item | Guideline | Adjustment |
|---|---|---|
| Base | 2B1.1(a)(1) | +7 |
| Loss in Excess of $3,500,000 but less than $9,500,000 | 2B1.1(b)(1)(J) | +18 |
| Sophisticated Means | 2B1.1(b)(10) | +2 |
| Theft of Major Disaster or National Emergency Benefits | 2B1.1(b)(12) | +2 |
| Money Laundering – 18 U.S.C. §1957 | 2S1.1(b)(2)(A) | +1 |
| Organizer or Leader Involving 5 or More Participants | 3B1.1(a) | +4 |
| Acceptance | 3E1.1 | -3 |
| **Total** | | **31** |

*See* PSR at ¶¶ 41-56.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Williams has a criminal history score of 17, which results in a criminal history category of VI. *Id.* at ¶ 76. The resulting Guidelines range is 188 to 235 months of imprisonment. *Id.* at ¶ 142.

## IV.    OUTSTANDING PRESENTENCE REPORT OBECTIONS

During her presentence interview, Williams stated that she had a hidden opioid addiction and would like to participate in RDAP, which provides inmates an avenue to be released up to 12 months early. *See* PSR at ¶¶ 120, 124. Although Williams claims she abused opioids daily until her arrest, her assertion is contrary to: her negative drug test at the time of arrest (PSR at ¶ 121); text messages she exchanged with Peterson in 2021 and 2022 where the only references to drugs involve selling pills and obtaining Percocet so that Williams could take 10 mg doses after her plastic surgery (Ex. C, Text Messages with Peterson); and emails she wrote to her sister while detained at FDC SeaTac that refers to drug treatment as a vehicle for her release from detention and her purported addiction to Percocet as a laughing matter ("tell my lawyer to try to get me in to treatment pending pre trail [sic] for my addition to perks lol"). Additionally, no illicit substances were found when federal agents searched Williams' home in March 2022.

Accordingly, while Williams may certainly avail herself of BOP's voluntary non-residential substance abuse treatment programs (NR DAP),[4] the government does not support a recommendation for Williams to participate in RDAP, which is a limited resource intended to serve individuals suffering from diagnosable and verifiable substance use disorders.

The government concurs with Probation's responses to the defense's outstanding objections.

---

[4] NR DAP is available to inmates at every institution and is appropriate for inmates who do not meet the admission criteria for RDAP but who wish to benefit from less intensive drug abuse treatment services. The program lasts 90 to 120 minutes per week for 12 to 24 weeks.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# V.    SENTENCING RECOMMENDATION

The United States recommends that the Court impose a term of imprisonment of 110 months, followed by five years of supervised release which is warranted given Williams' established history of recidivism.

For the reasons set forth below, this recommendation is appropriate given "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to ensure adequate general deterrence, and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

## A.    The Nature and Circumstances of the Offense—Williams' Unparalleled Exploitation of Every Major Pandemic Assistance Program During an Unprecedented National Emergency is an Aggravating Factor.

Because approximately four years have lapsed since the onset of the COVID-19 pandemic, it is easy to forget the chaotic, desperate, and dire circumstances facing our nation and our government's attempts to stem the catastrophic economic impact of the COVID-19 pandemic. Schools, businesses, and restaurants shuttered, while hospitals were overwhelmed with patients dying of COVID-19.[5] In 2020, a safe and effective COVID-19 vaccine was unfathomable to most. Yet, Williams saw the pandemic and its consequences not as a public health catastrophe but as an opportunity to exploit for a lavish lifestyle.

**Emergency Rental Assistance.** To mitigate the spread of COVID-19, federal, state, and local governments—including Washington and cities in King County—enacted eviction moratoriums that ensured residents remained housed during the global pandemic. The moratoriums were intended to assist the millions of Americans facing financial hardship. The last federal moratorium ended on October 3, 2021; Washington's

---

[5] *See, e.g.,* Cha, Ariana, "Faced with a crush of patients, besieged NYC hospitals struggle with life-or-death decisions," *The Washington Post* (Mar. 31, 2020), *available at* https://www.washingtonpost.com/health/2020/03/31/new-york-city-hospitals-coronavirus/.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statewide moratorium ended on October 31, 2021; and Seattle's moratorium ended on January 15, 2022.

In anticipation of exacerbating existing housing crises amidst the ongoing pandemic when the moratoriums ceased, the U.S. Department of Treasury began disbursing Emergency Rental Assistance Program funds to state, local, and tribal governments in early 2021. From March 2021 through 2022, Washington State and local governments, including King County, received over $900 million in federal emergency rental assistance. Nevertheless, the administrating agencies acknowledged that there was insufficient funding to help every household who qualified, thus, the screening criteria was intended to target those most likely to become homeless but for the assistance. Even so, during the first two years of the pandemic, between 2020 and 2022, the homeless population in Washington State increased by approximately 10%.[6]

Against this backdrop, Williams orchestrated the largest theft of Emergency Rental Assistance funds in the nation.[7] She relentlessly pilfered King County's EPRAP even as she was informed that the dwindling funds would be prioritized for those facing imminent eviction. Instead of yielding to those about to be homeless in the winter, Williams created fraudulent evictions documents to drain the emergency funds of every last penny, even upon her return from her trip to Colombia. Because ERPAP funds were exhausted, every dollar of the millions Williams diverted from EPRAP for her luxurious lifestyle should have been used to keep King County residents housed through the winter of 2021 and 2022.

---

[6] U.S. Dep't of Housing and Urban Development, "The 2022 Annual Homelessness Assessment Report to Congress," (Dec. 2022) at 109, *available at* https://www.huduser.gov/portal/sites/default/files/pdf/2022-AHAR-Part-1.pdf.
[7] The government is aware of only three other charged Emergency Rental Assistance Program cases in the nation: one in the Eastern District of Missouri and two in the Eastern District of North Carolina. In Missouri, the defendant was sentenced to a year and a day for obtaining $96,825 from the Emergency Rental Assistance Program and $140,000 from PPP, for a total loss of $237,086. In North Carolina, none of the defendants have been sentenced, but one case involves disbursements totaling $279,000 and the other case involves payments totaling $150,000.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Small Business Assistance.**  In June 2020, when Williams began filing to file fraudulent EIDL applications for funds intended to assist small businesses, American business owners had seen their livelihoods vanish overnight, an unprecedented occurrence in our nation's history and a far more severe economic impact than the 1918 influenza.[8]  In fact, by July 2020, only approximately half of small businesses were fully open and most worried about having to permanently close due to prolonged closures.[9]  Smaller businesses and minority-owned businesses in the Seattle-area reported particularly dire fates and had trouble accessing available assistance.[10]  By the end of the summer, while genuine small business owners desperately tried to stay afloat and battled online servers flooded with fraudulent submissions,[11] Williams submitted over two dozen fraudulent EIDL applications and caused two applications to be funded for $150,000 each.  By the following summer, Williams had submitted a total of at least 53 fraudulent EIDL and PPP applications and caused over $512,000 in taxpayer dollars to be disbursed to individuals who were not small business owners.

**Unemployment Benefits.**  When Williams began filing her fraudulent unemployment benefit claims in multiple states at the outset of the pandemic, state workforce agencies across the nation were struggling to make timely payments to genuine workers in need due, in part, to a surge of fraudulent claims.[12]  Approximately

---

[8] Bartik, Alexander, et al., "How Are Small Businesses Adjusting to COVID-19? Early Evidence From a Survey," *Nat'l Bureau of Economic Research* (Apr. 2020), at 3, 8, *available at* https://www.nber.org/system/files/working_papers/w26989/w26989.pdf.

[9] U.S. Chamber of Commerce, "July 2020 Small Business Coronavirus Impact Poll" (July 29, 2020), *available at* https://www.uschamber.com/small-business/july-2020-small-business-coronavirus-impact-poll.

[10] Roberts, Paul, "The deepening economic divide: How the pandemic has hurt small businesses," *Seattle Times* (Mar. 28, 2021), *available at* https://www.seattletimes.com/business/economy/the-deepening-economic-divide-how-the-pandemic-has-hurt-small-businesses/.

[11] *See, e.g.,* Trish Turner, "'Double the number of users' in PPP system as it reopens with more technical issues," ABC News (April 27, 2020), *available at* https://abcnews.go.com/Politics/double-number-users-ppp-system-reopens-technical-issues/story?id=70370289.

[12] *See, e.g.,* Gwyn, Nick, "Historic Unemployment Programs Provided Vital Support to Workers and the Economy During Pandemic, Offer Roadmap for Future Reform," Center on Budget and Policy Priorities (Mar. 24, 2022), *available at* https://www.cbpp.org/research/economy/historic-unemployment-programs-provided-vital-support-to-workers-and-the-economy.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20.6 million American were unemployed, far surpassing the Great Recession's peak of 15.2 million in 2009.[13]  Every fraudulent, claim—including those Williams filed— exacerbated unprecedented challenges during a national emergency.

**Sentencing Enhancements.**  Notably, both Congress and the Sentencing Commission have endorsed sentencing enhancements during national emergencies and major disasters.  *See* 18 U.S.C 1343 (increases maximum penalties to 30 years imprisonment and $1 million fine); USSG § 2B1.1(b)(2)(12) (two-level increase applied for offenses involving disaster fraud).  Congress enacted the enhanced statutory penalty for wire (and mail) fraud in response to reports of widespread fraud and abuse in connection to disaster funds disbursed for Hurricanes Katrina and Rita.  The Senate Judiciary Committee report noted:

> We want to help ensure that federal money goes to the right people and does not get stolen by criminals posing as victims. Congress wants to provide appropriate recovery and relief resources to affected States, and also ensure that these resources are protected and distributed only to the real victims–not to individuals seeking to take advantage of the disaster.

Senate Report No. 110-69, 110th Cong., 1st Session (May 22, 2007).

In this case, by the onset of the COVID-19 pandemic, Williams had been committing fraud for almost a decade.  While the government sought to prioritize the well-being of a suffering nation, Williams took advantage of the vulnerable period to obtain a personal windfall of millions to fund an extravagant lifestyle.

**B.  Defendant's History and Characteristics**

**1.  William's Unrelenting Disregard for the Rule of Law Despite Judicial and Law Enforcement Intervention is an Aggravating Factor.**

Williams' criminal history is astounding.  With 17 points—which do not account for multiple pending criminal investigations in various jurisdictions—Williams' criminal

---

[13] U.S. Bureau of Labor Statistics, "Unemployment Rises in 2020, as the country battles the COVID-19 pandemic" (June 2021), *available at* https://www.bls.gov/opub/mlr/2021/article/unemployment-rises-in-2020-as-the-country-battles-the-covid-19-pandemic.htm.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

history is even more severe than D'Arius Jackson (14 points), her co-defendant and elder brother by eight years.

Williams' criminal history score reflects that she has repeatedly squandered the mercy of at least 17 sentencing judges. As an adult, Williams has been sentenced to custody in Washington for a total of approximately 364 days, including multiple revoked suspended sentences. *See* PSR ¶¶ 60-73. Most recently, in 2020 and 2022, Williams received sentences for 90 days in custody for separate and distinct offenses in 2019 (¶¶ 72-73); however, it is unclear if and when Williams completed the sentence imposed in 2022.[14] In April 2018, Williams was sentenced to four years of custody for burglary and grand theft in Coeur d'Alene, Idaho, but it is unclear how much of that time she served given her criminal activity less than a year later in Washington. *See id.* at ¶¶ 72-73. It appears that the longest term of custody Williams has served was approximately 10 months in 2016 after revocation of her probation for an attempted burglary in Las Vegas in 2014. *Id.* at ¶ 66.

Williams' persistent criminal activity after the FBI executed a federal search warrant on her home and seized her electronic devices in March 2022, is particularly egregious. *See id.* ¶¶ 77-81. Even a month after Scottsdale Police arrested her in April 2023 for organized retail fraud that resulted in over $60,000 in loss, Williams continued to defraud the Emergency Rental Assistance Program through Arizona's local agency. *Id.* at ¶ 80.

Williams' crimes have continuously victimized our community and drained critical law enforcement resources from three federal investigative agencies and over a dozen state agencies in five states. In this case, her conduct stole millions in taxpayer funds and deprived at least 79 King County households from emergency rental assistance

---

[14] The sentence imposed on July 6, 2022, appears to be a City of Bellevue case, and the last docket entry in the King County records system notes that jurisdiction terminated at the end of June 2023, presumably before the sentence was served. The King County jail roster does not reflect Williams being detained for any period of time following sentencing. As detailed herein, by September 2022, Williams had traveled to Dubai, and by the end of 2022, she had relocated to Arizona until the time of her arrest in June 2023.

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in the winter, but the overall impact of Williams' criminal conduct on our community is immeasurable. Accordingly, a substantial term of prison is necessary.

### 2. Williams' Luxurious Lifestyle is an Aggravating Factor.

As detailed above, Williams used over $2 million of her ill-gotten gains to fund an extravagant lifestyle that she proudly showcased on social media, even after the FBI informed her about the pending federal investigation. Her use of emergency funds intended to prevent homelessness for luxe travel accommodations around the world and "resort-style" living in Arizona are particularly egregious. Williams' exploitation of an unprecedented national disaster to fuel a lavish lifestyle while King County residents on brink of eviction and small businesses suffered is unconscionable.

### C. A Substantial Term of Imprisonment is Consistent with Sentences in Other Major COVID Fraud Cases in this District.

Williams's conduct is exceptionally aggravating when compared to other COVID fraud cases in this district. No other defendant relentlessly targeted every major federal pandemic program for the entire duration of our national emergency. No other defendant involved over 50 accomplices. No other defendant single-handedly and methodically laundered millions in criminal proceeds before financial institutions or law enforcement could seize the funds. No other defendant had more criminal history points. Nevertheless, a number of COVID fraud defendants have been sentenced to substantial terms of imprisonment for less aggravating conduct. *See, e.g., United States v. Sparks*, Amended Judgment, Dkt. 78, CR21-189-JLR-01 (WDWa. May 31, 2023) (100 months for wire fraud and aggravated identity theft; $2 million attempted, $1 million actual loss); *United States v. De La Cruz*, Judgment, Dkt. 38, CR21-5336-RJB (WDWa. Sept. 16, 2022) (60 months for wire fraud, aggravated identity theft, and bribery; $360,000 loss); *United States v. Abidemi Rufai*, Judgment, Dkt. 56, CR21-5186-BHS (WDWa. Sept 26, 2022) (60 months for wire fraud and aggravated identity theft; $2.4 million attempted, $604,260 actual loss).

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 21

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Particularly relevant for the Court's consideration is the 100-month sentence Judge Robart imposed on Bryan Sparks last year. Sparks was a prolific and sophisticated fraudster with a criminal history category of V for a string of state drug and fraud offenses over a 14-year period in California and Washington. *See Sparks*, United States' Sentencing Mem., Dkt.74, CR21-189 (May 16, 2023). In contrast to Williams' life of luxury, Sparks and his co-defendant Autumn Luna were homeless at the time of their arrests because they used nearly every dollar of the approximately $1 million in criminal proceeds to feed Luna's severe addiction to cocaine and heroin and Sparks' use of methamphetamines. *Id.* While Williams submitted over 125 fraudulent applications to four pandemic programs, Sparks defrauded EIDL with 29 applications and Washington unemployment benefits with approximately 50 claims. *Id.* Sparks shared Williams' persistence in committing fraud despite law enforcement intervention during the course of the federal investigation and also had an aggravating role in the offense by teaching Luna how to perpetrate fraud for funds that exacerbated her addiction. *Id.* Although Sparks executed his fraud using aggravated identity theft, Sparks' total offense level for wire fraud was 24, seven points lower than Williams' score for wire fraud and money laundering. *Id.* Like Williams, Sparks had a troubled upbringing, resulting in an ACE score comparable to Williams'.

Accordingly, a substantial term of imprisonment is consistent with sentences in other major yet less aggravating COVID fraud cases in this district.

**D.     A Substantial Term of Imprisonment is Necessary to Deter and is Just Punishment for the Offense.**

On April 11, 2023, when a Scottsdale detective arrested Williams for her multi-state organized retail theft scheme (see PSR ¶¶ 77-78), the detective asked her about her extensive criminal history in Washington. According to the detective's report, Williams explained that she never had to do jail time or pay fines because Washington is a very lenient state. In other words, Williams consciously and rationally chose to continue her

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

incessant criminal activities for the last nearly 15 years because the consequences for her choices were not severe enough. As detailed above, law enforcement intervention—including the execution of a federal search warrant on Williams' home and seizure of her devices—did not deter her from continued criminal conduct. Repeated grants of mercy and leniency did not deter her. Increased custodial time for Williams' lesser offenses did not deter her.

Williams' crimes in this case are not merely a step up from her increasingly sophisticated theft and fraud offenses. Williams orchestrated over 50 individuals to comprehensively defraud every major federal pandemic assistance program for millions of dollars, resulting in the largest loss of emergency rental funds in the nation and inflicting a devastating fate on King County residents struggling to stay housed through the winter. Even if Williams had zero prior criminal history, her Guideline range for these offenses would be 108 to 135 months. Accordingly, the seriousness of this offense demands a substantial term of imprisonment to hold Williams sufficiently accountable, deter Williams and others in the future, and uphold the rule of law.

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VI.    CONCLUSION

The Court should sentence Williams to 110 months of imprisonment, followed by five years of supervised release.  The Court should further order Williams to pay $3,303,971 in restitution, as agreed upon in the Plea Agreement.

Dated: February 26, 2024

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

/s/ Cindy Chang
CINDY CHANG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax: 206-553-0582
Email: Cindy.Chang@usdoj.gov

United States' Sentencing Memorandum
*United States v. Williams*, CR23-090-JHC 01 - 24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970